E-FILED
Tuesday, 16 March, 2021  05:53:17 PM
Clerk, U.S. District Court, ILCD

# United States District Court
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN HUDSON, | ) |
| Plaintiff | ) |
| vs. | ) Case No. _____ |
| | ) *(The case number will be assigned by the clerk)* |
| JONATHAN EK, | ) |
| UNKNOWN EMPLOYEE(S) | ) |
| OF WEXFORD HEALTH | ) |
| SOURCES, INC AND | ) |
| WEXFORD HEALTH | ) |
| SOURCES, INC. | ) |
| Defendant(s) | ) |

(List the full name of ALL plaintiffs and defendants in the caption above. If you need more room, attach a separate caption page in the above format).

## COMPLAINT*

Indicate below the federal legal basis for your complaint, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants). However, 42 U.S.C. § 1983 and "Bivens" do not cover all prisoners' claims. Many prisoners' legal claims arise from other federal laws. Your particular claim may be based on different or additional sources of federal law. You may adapt this form to your claim or draft your own complaint.

■ 42 U.S.C. §1983 (state, county or municipal defendants)

☐ Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)(federal defendants)

☐ Other federal law: _____

☐ Unknown _____

*Please refer to the instructions when filling out this complaint. Prisoners are not required to use this form or to answer all the questions on this form in order to file a complaint. This is not the form to file a habeas corpus petition.

Jurisdiction is based on 28 U.S.C. § 1331, a civil action arising under the United States Constitution or other federal law. *(You may assert a different jurisdictional basis, if appropriate).*

## II. PARTIES

A. Plaintiff:

   Full Name: **JOHN HUDSON**

   Prison Identification Number: **K-52602**

   Current address: **3820 East Main Street**

   **Danville, Illinois 61834**

*For additional plaintiffs, provide the information in the same format as above on a separate page. If there is more than one plaintiff, each plaintiff must sign the Complaint, and each plaintiff is responsible for paying his or her own complete, separate filing fee.*

B. Defendants

   Defendant #1:

   Full Name: **Jonathan EK**

   Current Job Title: **Medical Director**

   Current Work Address **3820 East Main Street**

   **Danville, Illinois 61834**

   Defendant #2:

   Full Name: **Wexford Health Sources, Inc.**

   Current Job Title: **801 Adlai Stevenson Drive**

   Current Work Address **Springfield, Illinois 62703**

Defendant #3:

   Full Name: _____

2

Current Work Address _____

_____

Defendant #4:

  Full Name: _____

  Current Job Title: _____

  Current Work Address _____

  _____

Defendant #5:

  Full Name: _____

  Current Job Title: _____

  Current Work Address _____

  _____

*For additional defendants, provide the information in the same format as above on a separate page.*

### III. LITIGATION HISTORY

The "three strikes rule" bars a prisoner from bringing a civil action or appeal *in forma pauperis* in federal court if that prisoner has "on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?       Yes ☐       No ☒

If yes, please describe _____

_____

B. Have you brought any other lawsuits in federal court while incarcerated?

Yes ☐       No ☒

3

1. Name of Case, Court and Docket Number
   _____
   _____

2. Basic claim made _____

3. Disposition (That is, how did the case end? Was the case dismissed? Was it appealed? Is it still pending?) _____

*For additional cases, provide the above information in the same format on a separate page.*

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

*Prisoners must exhaust available administrative remedies before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). You are not required to allege or prove exhaustion of administrative remedies in the complaint. However, your case must be dismissed if the defendants show that you have not exhausted your administrative remedies, or if lack of exhaustion is clear from the complaint and its attachments. You may attach copies of materials relating to exhaustion, such as grievances, appeals, and official responses. These materials are not required to file a complaint, but they may assist the court in understanding your claim.*

A. Is there a grievance procedure available at your institution? Yes ■   No ☐

B. Have you filed a grievance concerning the facts relating to this complaint?

   Yes ■   No ☐

If your answer is no, explain why not _____
_____

C. Is the grievance process completed?   Yes ■   No ☐

4

Place(s) of the occurrence _____

Date(s) of the occurrence _____

State here briefly the FACTS that support your case. Describe what each defendant did to violate your federal rights. You do not need to give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph. Unrelated claims should be raised in a separate civil action.

THE COURT URGES YOU TO USE ONLY THE SPACE PROVIDED. Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement" of your claim showing that you are entitled to relief. It is best to include only the basic, relevant facts, including dates, places, and names.

## I. NATURE OF CLAIM

1) This action arises under the United States Constitution and the laws of the United States under the Civil Rights Act of 1871 and 42 U.S.C. 1983 to properply redress deprivations by Defendants of Plaintiff's right under the Eighth and Fourteenth Amendments of the United States Constitution.

## II. JURISDICTION AND VENUE

2) Jurisdiction is based upon 28 U.S.C. 1311, 1343 and 1367.

3) Venue is is proper in the central District of Illinois pursuant to 28. U.S.C. 1391 as acts and omissions complained or occured within said judicial district.

## III. PARTIES

4) Plaintiff JOHN HUDSON is currently incarcerated at the Danville Correctional Center in Danville, Illinois and was incarcerated at

5

this facility at all relevant times to this complaint.

5) Defendant Jonanthan EK was the physician employed at Danville Correctional Center by Defendant Wexford Health Sources, Inc, at all times relevant to this complaint.

6) Defendant WEXFORD HEALTH SOURCES, INC. Was and is a Florida corporation doing business in Illinois under contract with the Illinois Defendant of Corrections facilities including Danville Correctional Center at all times relevant to this complaint.

7) Defendants acted under color of law at all times relevant to this complaint and are being sued in their individual copacity.

IV.   FACTUAL ALLEGATIONS

8) Plaintiff JOHN HUDSON is 48 years old.

9) Plaintiff JOHN HUDSON was in custody of the Illinois Department of Corrections and incarcerated at Danville Correctional Center at all times relevant to this complaint.

10) On February 18, 2020, during sick call plaintiff reported numbness and ongoing chronic pain on the left side of his body and swelling and worsening pain in his left thumb, See Medical Records attached as Exhibit 1, pages 5-6.

6

11) Plaintiff was examined by former Dr. Justin Young who diagnosed plaintiff of suffering chronic cervical radionalapathy left thumb nodule, unspecified. See Medical Records attached as Exhibit 1, page 7.

12) Former Dr. young noted in plaintiff's medical records that plaintiff's grip was a + 5/5 in strength. See Medical Records attached as Exhibit 1, page 7.

13) It was also noted that there was a bony tenderness of a visible deformity to left thumb nodule + mild eryttema. See Medical Records attached as Exhibit 1, page 7.

14) As treatment, plaintiff was prescribed a condition of Gabapentin pain medication by former Dr. Justin Young. See Medical Records attached as Exhibit 1, page 6.

15) Over the next four months, plaintiff's left thumb increased in size and the pain worsen in his thumb.

16) On June 23, 2020, Plaintiff was examined by a nurse regarding his ongoing issue with his thumb. The unknown nurse noted in plaintiff's medical records that she observed a large nodule to thumb area that was hard and unmovable. See Medical records attached as Exhibit. 1, page 8.

17) The unknown nurse made a urgent referral for plaintiff to see doctor. See Medical Records attached as Exhibit 1, page 8.

18) On July 14, 2020, plaintiff was seen by Defendant Dr. Jonathan EK. Defendant EK noted in plaintiff's medical records that plaintiff reports his left thumb has grown in size and was tender to the touch. Plaintiff further informed Defendant EK that he was given a follow-up of the results. See Medical Records attached as Exhibit 1, page 9-10.

19) Defendant noted in Plaintiff's medical records a left thumb cyst and inflammed region. As treatment plaintiff was given a shot of Rocephin 1-gram to his left buttox. See Medical Records attached as Exhibits 1.

20) The treatment was prescribed to plaintiff for 10 days and he was to

follow-up with Defendant EK after the 10th day, See Medical Records attached as Exhibit 1, page 10.

21) Defendant did not follow up with plaintiff after the 10th day.

22) On July 23, 2020, Defendant EK unexplainably discontinued plaintiff's Gabapantin pain medication for his left thumb. See Medical Records attached as Exhibit 1, page 11.

23) On September 11, 2020, plaintiff was examined by a nurse during sick call regarding his left thumb. See Medical records attached as Exhibit 1, page 13.

24) The unknown nurse noted in plaintiff's medical records that his thumb was 5-inches diameter, tenderness, swolen, redness, bleeding and pain level was at a 10. Plaintiff was referred to see Defendant EK the following week. See Medical records attached as Exhibit 1, page 13.

25) On September 17, 2020, Plaintiff was examined by Defendant EK.

26) Defendank EK noted in plaintiff's medical records that his thumb had increased in size, persistent pain and swelling, tenderness. See Medical Records attached as Exhibit 1, page 14.

27) Plaintiff was prescribed Tyleno l 3's for two weeks, and Defendant EK referred Plaintiff for thumb surgery consult. See Medical records attached as Exhibit 1, page 14.

28) Prior to plaintiff's September 17, 2020 appointment with Defendant EK, he was without pain medicationfrom August 19, 2020-September 17, 2020.

29) Plaintiff suffered unbearable pain in his left thumb from August 19, 2020-September 17, 2020 as a result of the lack of pain medication, and Defendant EK discontinuation of plaintiff's Gabapentin pain medication.

## V. COUNT I

**Defendant's Deliberate Indifference to Plaintiff's Serious Medical Condition and Needs under the Eighth and Fourteenth Amendment of the United States Constitution**

30) Plaintiff, JOHN HUDSON, hereby incorporates and re-alleges paragraphs 1-32 as though set forth fully herein in its entirety.

31) On July 16,2020, Plaintiff informed Defendant EK that he was in severe pain from the large cyst on his left thumb and requested pain medication to stop because it was affecting his daily activities.

32) Defendant EK told plaintiff that he wasen't prescribing him no pain medication because he didn't believe plaintiff needs it.

33) Defendant EK further told plaintiff to purchase the over the counter pain relievers at commissary if pain persisted.

34) On or about July 23,2020, Defendant EK unexpalinably discontinued plaintiff's Gabapentin pain medicaiton.

35) During the week of July 12,2020-July 18,2020, Plaintiff was seen by Defendant EK regarding his painful cyst that increased in size on his left thumb.

36) At the appointment Defendant EK kept asking plaintiff how much time he had left on his sentence and what medication plaintiff was currently taking.

37) Plaintiff disclosed that he was taking Tylenol 3's, Dicloferiac, Gabapentin, and Levetracetan.

38) Defendant EK told plaintiff that he was discontinueing his Tylenol 3's, and Gabapentin pain medication because he was the new doctor and that he don't know why former doctor Justin Young prescribed people pain medication that people didn't need.

39) Plaintiff specifically told Defendant EK that former doctor Justin Young prescribed him the Gabapentin pain medication as treatment for his left thumb injury and cyst.

40) Plaintiff suffers burning, stabbing, tingling, and numbness in his left thumb and eye.

41) Defendant EK told plaintiff that he didn't care and wasen't giving

plaintiff any medication for his pain.

42) The abnormalities in plaintiff's left eye is hypersensitive to the touch and cold air.

43) As a result of Defendant EK's discontinuation of plaintiff's Gabapentin pain medication the pain in his left thumb has affected his daily activities and the pain in his left eye has worsen and affected his peripheral nerve which has caused him headaches and sleep deprivation.

44) Plaintiff was deprived his Gabapentin pain medication as early as first week of July 2020.

45) Approximately from October 1,2020-February 25,2021, plaintiff was denied pain medication for his thumb and eye injuries by defendant EK.

46) On February 25,2021, plaintiff was taken to an outside hospital for thumb surgery.

47) The surgeon disclosed to plaintiff that plaintiff should have received thumb surgery over a year ago.

48) The year of delay of medical care and surgery was proximate cause of plaintiff's injuries and pain.

49) Following the February 25,2021 surgery, the unknown surgeon informed plaintiff that his stitches in his hand should be removed between 7 to 10 days and he would follow up him to do so.

50) Om March 11, 2021, plaintiff was taken back out to have his stitches removed by his surgeon.

51) The unknown surgeon disclosed to plaintiff that the delay was caused by the Defendant EK.

52) After plaintiff's return to Danville he was examined by Defendant EK.

53) Plaintiff disclosed to Defendant EK he was still experiencing the same pain symptons in his left thumb and requested that he be prescribed the Gabapentin pain medication which help control and manage plaintiff's thumb and eye.

plaintiff any medication for his pain.

42) The abnormalities in plaintiff's left eye is hypersensitive to the touch and cold air.

43) As a result of Defendant EK's discontinuation of plaintiff's Gabapentin pain medication the pain in his left thumb has affected his daily activities and the pain in his left eye has worsen and affected his peripheral nerve which has caused him headaches and sleep deprivation.

44) Plaintiff was deprived his Gabapentin pain medication as early as first week of July 2020.

45) Approximately from October 1,2020-February 25,2021, plaintiff was denied pain medication for his thumb and eye injuries by defendant EK.

46) On February 25,2021, plaintiff was taken to an outside hospital for thumb surgery.

47) The surgeon disclosed to plaintiff that plaintiff should have received thumb surgery over a year ago.

48) The year of delay of medical care and surgery was proximate cause of plaintiff's injuries and pain.

49) Following the February 25,2021 surgery, the unknown surgeon informed plaintiff that his stitches in his hand should be removed between 7 to 10 days and he would follow up him to do so.

50) Om March 11, 2021, plaintiff was taken back out to have his stitches removed by his surgeon.

51) The unknown surgeon disclosed to plaintiff that the delay was caused by the Defendant EK.

52) After plaintiff's return to Danville he was examined by Defendant EK.

53) Plaintiff disclosed to Defendant EK he was still experiencing the same pain symptons in his left thumb and requested that he be prescribed the Gabapentin pain medication which help control and manage plaintiff's thumb and eye.

54) Defendant EK denied plaintiff's request. Dr. EK told plaintiff that he might prescribe him Naproxens.

55) Plaintiff disclosed to Defendant EK that Ibuprofen, Tylenol, Naproxen and Motrins was ineffective of treating his thumb and eye pain.

56) Defendants JONANTHAN EK and UNKNOWN EMPLYEE(S) OF WEXFORD HEALTH SOURCES, INC knew of plaintiff JOHN HUDSON'S serious medical condition and needs yet failed to provide adequate medical care to him after arriving at Danville Correctional Center; specifically, aformentioned Defendant's primarily failed to:

a) provide plaintiff JOHN HUDSON adequate painmanagement prescriptiona;

b) refer plaintiff JOHN HUDSON to a medical specialist for consult and/or treatment in a timely manner.

c) follow the orders and/or findings of doctor(s) not employed by Defendant WEXFORD HEALTH SOURCES, INC. who examined Plaintiff JOHN HUDSON.

57) The aformentiond acts and omissions of Defendants JONANTHAN EK and EMPLOYEE(s) OF WEXFORD HEALTH SOURCES, INC. were deliberately indifferent to paintiff JOHN HUDSON serious medical needs aggravating and worsening plaintiff JOHN HUDSON'S medical condition.

58) Specifically, plaintiff JOHN HUDSON suffered extreme pain, headaches and sleep deprivation while incarcerated at Danville Correctional Center.

59) Defendant WEXFORD HEALTH SOURCES, INC. promulgated practices, policies and/or customs that control the medical care provided at Danville Correctional Center and these practices, policies and/or customs have been implemented by it's employees at Danville Correctional Center, including Defendant's JONANTHAN EK and UNKNOWN EMPLOYEE(S) OF WEXFORD HEALTH SOURCES, INC., resulting in the deliberate indifferences to plaintiff's JOHN HUDSON'S serious medical needs.

60) Specifically, Defendant WEXFORD HEALTH SOURCES, INC, has practices, policies and/or customs that primarilyresulted in the following:

a) allowing the cost of medical care to be the driving force behind medical decisions resulting in poor health outcomes for it's patients;

b) failing to establish on intake system and medical records system that requests and confirms that all relevant medical records to a current condition of a paticular patient are received;

c) failing to provide patients with timely access to health care outside of Wexford Health Sources, Inc.;

d) failing to provide patients with serious and life-threatening medical conditions with prompt access to appropriate medical specialists;

e) failing to provide any oversight pertaining to the quality of care provided by Wexford Health Sources, Inc.

61) More of the ofrementioned practices, policies and/or customs of Defendant WEXFORD HEALTH SOURCES, INC. constitutes isolates instances of an act or omission.

62) In fact, the aforementioned practices, policies, and/or customs of Defendant WEXFORD HEALTH SOURCES, INC. constitute unconstitional practices, policies and customs.

63) Plaintiff, JOHN HUDSON has suffered permanent injuries in addition to significiant pain and suffering and emotional injuries as a result of Defendant's deliberate indifference to plaintiff's JOHN HUDSON'S serious medical needs.

64) The aforementioned acts and/or omissions of Defendants were wilfull, wanton, malicious, opressive and done with reckless disreguard to and/or callous disreguard for plaintiff JOHN HUDSON'S rights and justify the award of exemplary and punitive damages in an amount to be determined by a Jury at trial.

65) As alleged in more detail above, Defendants knew or should have known that plaintiff JOHN HUDSON was in serious medical need of medical care; yet, Defendant's acted in deliberate indifference to his serious menical needs even though timely appropriate treatment for his serious medical needs was feasible.

66) As alleged in more detail above, Defendants failed to provide JOHN HUDSON with adequate medical care.

67) The conduct of Defendants, both their acts of omissions and commission, proximately caused plaintiff JOHN HUDSON'S physical and emotional injuries as set forth more fully above.

68) Defendant deprived plaintiff JOHN HUDSON of the right, privileges and immunities secured to him by the Eighth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder; therefore, Defendants are jointly and severally liable to plaintiff JOHN HUDSON pursuant to 42 U.S.C. 1983.

## VI. COUNT II.

### Monell Claim Against Defendant Wexford Health Sources, Inc.

69) Plaintiff, JOHN HUDSON, hereby incorporates and re-alleges paragraphs 1-71 as though fully set forth in its entirety.

70) The Constitutional violations set forth above were committed pursuant to the unconstitutional practices, policies and/or customs of Defendant WEXFORD HEALTH OSURCES, INC. acting under color of law.

71) Defendant WEXFORD HEALTH SOURCES, INC. had practices, policies, and/or so prevalent and widespread as to comprise corporate policy and in turn compromise medical care ultimately causing the Constitutional violations set forth above for its patients including plaintiff JOHN HUDSON.

72) Defendant WEXFORD HEALTH SOURCES, INC., by and through its practices, policies and/or customs, acted as the moving force behind the Constitutional violations in his compalint.

73) The deficiences in the practices, policies and/or customs of Defendant WEXFORD HEALTH SOURCES, INC. have been documented by well-researched and highly respected studies and reports and within the four corners of the Wexford Provider Handbook.

74) At all times alleged, Wexford had a policy and practice of maltreatment that caused harm to prisoners, including Plaintiff.

75) Defendant Wexford had a policy and practice as stated in the Wexford provider Handbook, which states:

"Cost Consideration: A criticism frequently directed toward private managed care programs like Wexford to improve profits. Similar criticism has been directed at the medical industry in general, implying that cost-money-should never be a consideration in treatment, and with progressive goverment "Health CareReform" will become a far greater factor than it has ever been under the "control of the health profession." Consideration in deciding treatment is given to whether or not the Department of Corrections has the responsibility to provide treatment. The mere existence of a condition DOES NOT CONSTITUTE A RESPONSIBILITY FOR REPAIR! When considering alternatve treatment approches, cost becomes a conisderation. Even then, it is not THE determinant, but only ONE of several vairables considered. Meanwhile, the role of the medical staff is to: 1) provide medical care to individual patients, and 2) seek the best quality we can afford and spread our health care budget to effectively cover as many services as possible. Cost has been and must continue to be a consideration. The "cost of service" remain an important factor to be shouldered by each health care professional. Being fully responsible builds a broader range of treatment alter natives".

76) On information and belief, the Illinois Department of Correctiona awarded Wexford a contract to provide medical care and services to inmates on a low bid basis.

77) Defendant Wexford's bid created and established the ceiling of its "budget".

78) On information and belief, treatment and decisions by medical professionals, such as Defendant JONANTHAN EK is influenced by Defendant Wexford's above-stated policy and practice such that necessary medical treatment is denied to prisoners, such as palintiff, based on Wexford's "budget".

79) On information and belief, the Wexford provider Handbook, including the above-stated policy, was distributed and read by Defendant's EK and UNKNOWN EMPLOYEE(S) OF WEXFORD HEALTH SOURCES, INC.

80) The actions of the individual Defendants as alleged in his complaint were done pursuant to and as a reuslt of one or more of the practices,

policies and/or customs of Defendant WEXFORD HEALTH SOURCES, INC. as set forth above.

81) The actions of the individual defendants as alleged in his Compalint and the actions of Defendant WEXFORD HEALTH SOURCES, INC. and its supervisory employees in failing to train, supervise and discipline emploees with respect to said actions resulted in recurring situations at Danville Correctional Center and not iso;ated instances of a failure to act.

82) The practices, policies and/or customs described in this complaint were widespread, permanent, well-settled and were known or should have been known to the policy-makers of Defendant WEXFORD HEALTH SOURCES, INC.

83) The policy makers of Defendant WEXFORD HEALTH SOURCES, INC were instrumental in maintaining, overlooking and perpetuating the unconstitutional practices, policies and/or customs described above.

84) Though its practices, policies and/or customs, Defendant WEXFORD HEALTH SOURCES, INC. deprived plaintiff JOHN HUDSON of the rights, privileges and immunities secured to him by the Eighth and Fourteenth Amendments to the Constitution of the United States and laws enacted therunder; therefore, Defendant WEXFORD HEALTH SOURCES, INC. is liable to plaintiff JOHN HUDSON pursuant to 42 U.S.C. 1983.

## RELIEF REQUESTED

(State what relief you want from the court.)

1) Award plaintiff the sum amount of $150,000 one hundred and fifty thousand in Compensatory damages;

2) Award plaintiff the sum amount of $50,000 fifty thousand in punative damages; and

3) Grant plaintiff such other relief this Court deem just and appropriate.

JURY DEMAND     Yes [X]    No [ ]

Signed this __12th__ day of __MARCH__, 20__21__.

*John Hudson*
(Signature of Plaintiff)

| Name of Plaintiff: JOHN HUDSON | Inmate Identification Number: K-52602 |
|---|---|
| Address: 3820 East Main Street Danville, Illinois 61834 | Telephone Number: |

8